IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVEN CRAIG AND JULIE
CRAIG, Individually and as Husband
and Wife and as next friend of
MICHAEL CRAIG, their minor child,

     Plaintiffs,

vs.                            Civ. No. 99-1308 MV/DJS

TORRANCE COUNTY, et. al.

         Defendants.

## MEMORANDUM OPINION ORDER

**THIS MATTER COMES** before the Court on Defendants Torrance County, Don Lyles, Susan Encinias and Israel Barrera's (hereinafter "Torrance County Defendants") Motion to Dismiss Fourth Amendment Claim, Motion to Dismiss Fourteenth Amendment Claim, Motion to Motion to Dismiss Count II of Plaintiffs' Complaint, Motion to Dismiss Based on Qualified Immunity, and Motion to Dismiss Count IV of Plaintiffs' Complaint.

The Court having considered the motions, briefs, relevant law, and being otherwise fully informed finds that Defendants' Motion to Dismiss Plaintiffs' Fourth Amendment Claim **[Doc No. 24]** is well taken, in part, and will be **DENIED** with respect to Plaintiff Steven Craig and **GRANTED** with respect to Plaintiff Julie Craig; Motion to Dismiss Fourteenth Amendment Claim **[Doc No 25]** is well taken, in part, and will be **DENIED** with respect to Plaintiff Steven Craig, but will be **GRANTED** with respect to Plaintiff Julie Craig; Motion to Dismiss Count II of Plaintiffs' Complaint **[Doc No 26]** is not well taken and will be **DENIED**; Motion to Dismiss

Based on Qualified Immunity **[Doc No. 28]** is not well taken and will be **DENIED**; and Motion to Dismiss Count IV of Plaintiffs' Complaint **[Doc. No. 27]** is partially well taken and will be **GRANTED IN PART and DENIED IN PART**.  Plaintiff is further instructed to amend his Complaint within 20 days from the date of this Order as explained by the Court below.

## FACTUAL BACKGROUND

On November 14, 1997 a severe snowstorm hit north-central New Mexico.  Plaintiff Steven Craig was traveling thorough the storm to his home near Edgewood, New Mexico from Los Alamos, New Mexico, to meet his wife and child who were waiting at home.  Defendant Officer Jonathan King, a law enforcement officer with the City of Moriarty Police Department (MPD) had set up a road block due to the storm at the west end city limits of the City of Moriarty barring west bound traffic on the interstate frontage road known as Old Highway 66.  Officer King stopped and detained Steven Craig and refused to allow him to proceed on the closed road. Steven Craig explained that he was a local resident proceeding home just a few miles away, but was still denied permission to continue on the road.  When Officer King went to detain another westbound motorist, Mr. Craig decided to proceed home on the closed road.  Officer King abandoned his post at the road block in order to pursue Mr. Craig.  At some point a Torrance County Sheriffs Department (TCSD) vehicle containing Defendants Deputies Alan Gallegos, Israel Barrera and Susan Encinias joined in the pursuit of Mr. Craig's vehicle.  Upon arrival at the driveway to the Craig residence, Deputy Sheriffs Gallegos and Barrera exited their patrol car with guns drawn, while Officer King and Deputy Encinias remained in their respective vehicles.  While Mr. Craig was attempting to pull into his driveway, Deputy Gallegos and Deputy Barrera opened fire on Mr. Craig, striking his truck with at least three bullets.   At no time had Officer King or

2

any other officer or deputy reported that Mr. Craig was either armed or dangerous or had provoked the use of deadly force through words or actions.  Mr. Craig was unharmed and proceeded to his home whereupon he was seized and arrested by the officers and deputies.   Julie Craig, Mr. Craig's wife, became upset upon learning of the incident and arrest of her husband. Officer King ordered that she stop speaking with her husband who was in the patrol car and attempted to close the patrol car door to prevent further communications.  Mrs. Craig allegedly touched or applied force to Officer King, whereupon he decided to arrest her.  Mrs. Craig was placed in an "arm bar," which resulted in an elbow fracture, and forced into the snow face down. Officer King, joined by Sergeant Garcia of the MPD, struck Mrs. Craig on the back of her thigh with either a closed fist or baton in a "nerve strike," leaving severe contusions.  Officer King then violently slammed Mrs. Craig against the patrol car several times causing injury.  Mrs. Craig was then abruptly lifted from the snow by her handcuffs, severely injuring her shoulders.  Michael Craig, the son of Steven and Julie Craig, witnessed the arrests of his parents, suffering trauma. The charges against Mr. and Mrs. Craig were later dismissed.

Plaintiffs allege that the MPD and TCSD have a policy, practice or custom of allowing its officers to use deadly, excessive or unreasonable force without the fear of discipline. Plaintiffs further allege that the MPD and TCSD ratified and approved of the conduct of the officers and deputies involved by exonerating them of any wrongdoing and failing to discipline them. Plaintiffs allege that the MPD and TCSD's failure to investigate complaints of police misconduct by the citizenry with the result that illegal behavior is ratified or condoned.   Plaintiffs also allege a custom of inadequate training by MPD and TCSD.  Neither Deputy Barrera or Deputy Gallegos were currently certified with their weapon in conformance with New Mexico law, rules and

3

regulations.  Furthermore, neither deputy had received any training in the use of deadly force, the arm bar or the nerve strike procedures by the TCSD.  Plaintiffs also allege that the MPD and TCSD had failed to adequately train or educate its officers to provide medical attention to persons sustaining injuries while in custody.

## LEGAL STANDARD OF REVIEW

A court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts supporting the complaint's claims that would entitle him or her to relief.  *H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 249-50 (1989).  In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff.  *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).  The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  These deferential rules, however, do not allow the court to assume that a plaintiff  "can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'"  *Cayman Exploration Corp. v. United Gas Pipe Line Co*., 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

The standard is slightly different when the basis for dismissal is qualified immunity.  *See*

4

*Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997).  Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known." *Baptiste v. J.C. Penney*.  In the context of a motion to dismiss, once the qualified immunity defense is raised, the plaintiff must demonstrate both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred.  *See Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994) (quotation omitted).  In so doing, the Court applies " a heightened pleading standard, requiring the complaint to contain 'specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." *Dill v. City of Edmond*, 1555 F.3d 1193, 1204 (10th Cir. 1998).  If the original complaint is deficient, the plaintiff must amend his or her complaint accordingly.  *See Breidenbach v. Bolish,* 126 F.3d at 1293.

## DISCUSSION

### A.      Excessive Force Claim Pursuant to the Fourth Amendment

The Torrance County Defendants move to dismiss Plaintiffs' Fourth Amendment Claims alleging the Defendants used unlawful and excessive force while arresting Plaintiffs.  The Fourth Amendment protects individuals against unreasonable searches and seizures.  *See Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994), *cert. denied*, 513 U.S. 1109 (1995).  To state a claim for excessive force under the Fourth Amendment, a plaintiff must show both that a seizure has occurred and that the seizure was unreasonable.  *Id.*  The dispute in this case is whether a seizure in fact occurred when Deputies Gallegos and Barrerra discharged their firearms at Mr.

5

Craig and struck his vehicle.

A seizure occurs only when a fleeing person is physically touched by police or when he submits to a show of authority by police. *See California v. Hodari*, 499 U.S. 621, 626-27 (1991); *Bella*, 24 F.3d at 1255. An assertion of authority by police without submission does not constitute a seizure for Fourth Amendment purposes. *Id.* Therefore, when law enforcement officers shoot at a fleeing suspect, a seizure occurs only if the bullet strikes the fleeing person or causes the fleeing person to stop. *See Bella*, 24 F.3d at 1256; *Cole v. Bone*, 933 F.2d 1328, 1332-33 (8th Cir. 1993). "A seizure is a single act, and not a continuous fact." *Bella*, 24 F.3d at 1256 (citations omitted). The Fourth Amendment prohibits only unreasonable seizures, not unreasonable or ill advised conduct in general. *Id.* As such, pre-seizure conduct is not subject to Fourth Amendment scrutiny. *See Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992). A shooting which is not immediately connected with an arrest is not part of Fourth Amendment analysis. For example, in the *Bella* case, the officer fired shots striking the helicopter which the plaintiff, an innocent hostage, was flying under gunpoint. However, the plaintiff did not land the helicopter until an hour later. The Tenth Circuit held that the shots fired by the police officer which struck the plaintiff's helicopter did not result in a seizure because although the shots constituted an assertion of authority, they did not cause the plaintiff to stop the helicopter. *Bella*, 24 F.3d at 1256. The Court reasoned that because the plaintiff did not contend that he was seized until his arrest and did not challenge his actual seizure at the airport where he was arrested his complaint failed to state a claim for a Fourth Amendment violation. In a similar case, *Latta v. Keryte*, the Tenth Circuit found that there was no seizure where the Plaintiff had been pursued and shot at by police, but did not submit to police authority or stop his vehicle until he arrived at a

roadblock.  *Latta v. Keryte*,  118 F.3d, 693, 700 (10th Cir. 1997).

The Court is unclear from Mr. Craig's Complaint as to the chronology of events leading up to the shooting and his subsequent arrest.  Although the Court understands that the arrest took place after the shooting, there is an ambiguity as to the events that transpired between the shooting and the arrest, how much time passed between the shooting and Mr. Craig's arrest, the layout of the Craig driveway and property, and the distance that Mr. Craig traveled between the shooting and the arrest, and where Mr. Craig was finally arrested.  Defendants similarly fail to elucidate this issue.  Without further clarification of the factual background, the Court cannot at this time make an informed ruling on Defendants' Motion to Dismiss the Fourth Amendment Claim.  Accordingly, Mr. Craig is instructed to amend his Complaint within 20 days of the date of this Order to address the Court's concerns.  At that time, Defendants are free to renew their motion to dismiss.  For the present time, however, Defendant's Motion to Dismiss with respect to Mr. Craig's Fourth Amendment Claim is denied with the provision that the Court will revisit the issue upon receipt of the Amended Complaint.

With respect to Mrs. Craig's claim, the Complaint does not allege any involvement of the Torrance County Defendants in the arrest of Mrs. Craig.  Accordingly, Mrs. Craig's Fourth Amendment claim against the Torrance County Defendants will be dismissed.

**B.      Excessive Force Claim Pursuant to the Fourteenth Amendment**

The United States Supreme Court has found that "the use of deadly force to prevent the escape of an un apparently unarmed suspected felon" is unconstitutional.  *Tennessee v. Garner*, 471 U.S. 1 (1985).  Under *Garner*, officers must not use deadly force unless there is "probable cause to believe the suspect poses a significant threat of death or serious physical injury.

Excessive force claims are generally analyzed pursuant to the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (claims of excessive force in the course of arrest, stop, or other seizure should be analyzed under the Fourth Amendment rather than pursuant to substantive due process principles).  However, when the excessive force claims arise from conduct which occurred *prior to*, not in the course of the actual arrest or seizure, the Tenth Circuit has applied a substantive due process analysis.  *See, e.g, Latta*, 118 F.3d at 701; *Bella*, 24 F.3d at 1257.  Under the due process standard, the relevant factors to be considered in determining whether an officer used excessive force are: (1) the relationship between the amount of force and the need presented; (2) the extent of injury inflicted; and (3) the motives of the officer.  *See Hannula v. City of Lakewood*, 907 F.2d 129, 131-32 (10th Cir. 1990).  Force inspired by malice or "by unwise excessive zeal amounting to an abuse of official power that shocks the conscience...may be redressed under [the Fourteenth Amendment].  *See Bella,* 24 F.3d at 1257.  The Tenth Circuit has yet to uphold an excessive force claim "without some evidence of physical injury."  *Id.*  Several other circuits have suggested that an excessive force claim may be stated without proof of a physical injury in rare circumstances where one of the other due process factors involve particularly egregious governmental conduct.  *See Gumz v. Morisette*, 772 F.2d 1395, 1401-02 (7th Cir. 1985) (upholding emotional distress claim where officers maliciously took advantage of an individual's mental weakness), *overruled on other grounds*, *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir. 1987); *Black v. Stephens,* 662 F.2d 181 (3rd Cir. 1981) (upholding jury verdict where officer without provocation brandished his revolver eighteen inches from a motorist's head, with the motorist's wife in the line of fire, and threatened to shoot), *cert. denied*, 455 U.S. 1008 (1982).  Although the Tenth Circuit has not yet adopted this approach, they have also never

8

precluded the possibility that a particularly egregious excessive force claim may stand

notwithstanding the lack of physical injury. *Bella*, 24 F.3d at 1258. ("we have never adopted this

approach and we need not decide the propriety of such an approach in the instant case" in the

absence of egregious circumstances). In *Bella*, the Tenth Circuit found that no particularly

egregious circumstances existed where a helicopter in which a hostage was riding with his armed

captor was shot at by the police in an attempt to secure a rescue. Implicit in the Court's holding

was a finding that the police officer was not acting maliciously where he was attempting to rescue

the hostage. *Id.* Similarly, in *Latta*, the Tenth Circuit found that it was not excessive force for a

police officer to shoot the tires out on a car in which the suspect was swerving and reasonably

believed to be intoxicated and presented a danger to other motorists and himself. *Latta*, 118 F.3d

at 701. Other jurisdictions have found egregious circumstances where the excessive force is not

justified under the particular circumstances, despite the fact that no physical injury resulted. For

example, in *Checki v. Webb*, 785 F.2d 534, 535 (5th Cir. 1986) the Fifth Circuit found that an

unprovoked high speed car chase conducted by police officers in an unmarked car amount to

excessive force, holding

> [i]t cannot reasonably be argued that no serious physical danger confronts civilians who
> are forced to travel at speeds over 100 mph in their attempt to flee a terrorizing police
> officer. Furthermore, there is no valid reason for insisting on physical injury before a
> §1983 claim may be stated in this context. A police officer who terrorizes a civilian by
> brandishing a cocked gun in front of that civilian's face may not cause physical injury, but
> he has certainly laid the building blocks for a §1983 claim against him. Similarly, where a
> police officer uses a police vehicle to terrorize he has done so with malicious abuse of
> official power shocking the conscience, a court may conclude that the officers have
> crossed the "constitutional line.

In finding a constitutional violation, the *Checki* court distinguished between police conduct that is

negligent and not intended to cause harm to the plaintiff in question which would fall short of

9

sufficiently stating a constitutional claim, and malicious intent to terrorize or harm the plaintiff which does rise to the level of a constitutional violation.

The Court finds the reasoning of the *Checki* court to be both persuasive and compatible with the Tenth Circuit holdings in *Bella* and *Latta*.  Unlike the facts in *Bella* and *Latta* in which the officers' actions were neither unreasonable nor egregious under the circumstances, the officers' actions in this case were driven by malice or "unwise, excessive zeal amounting to an abuse of official power that shocks the conscience." *Bella*, 24 F.3d at 1257. Although the Plaintiff in this case suffered no physical injury, the other two factors to be considered in an excessive force claim, including the relationship between the amount of force and the need presented and the motives of the officers are sufficiently egregious to cross the line into a constitutional violation.  *See Hannula v. City of Lakewood*, 907 F.2d at 131-32. There is no evidence before the Court which could possibly justify the use of deadly force in these circumstances.  The officers were informed by Plaintiff that he was a resident of the area and needed to return home on the closed road.  The officers had no reason to suspect that Plaintiff was either armed, a dangerous felon or a potential threat to himself or others.  Moreover, it is evident that Plaintiff was en route home, and the officers could easily have continued the pursuit a few hundred yards until he arrived at his doorstep in order to question or detain him.  Under these circumstances, the Court finds the use of excessive force to be wholly disproportionate to the need presented.  Moreover, there is nothing accidental or even merely negligent about hiring a weapon at an unarmed citizen.  Rather, it is apparent that the officers were driven by malicious abuse or excessive zeal that shocks the conscience and is sufficiently egregious to rise to the level of a constitutional violation.  Simply because Plaintiff was not injured in the onslaught of gunfire does not give unfettered

10

license to the officers to unlawfully use excessive force.  Just as in the *Checki* case, "it cannot

reasonably be argued that no serious danger confronts civilians" who become the target of

unprovoked gunfire by two officers. *See Checki*, 785 F.2d at 535.  A deputy sheriff who fires at

an unarmed civilian who has not in any conceivable manner threatened the deputy may not

necessarily cause physical injury, but he has certainly laid the building blocks for a §1983 claim.  It

would be counterintuitive indeed to give §1983 relief to Plaintiff only if the officers had succeeded

in shooting him, but provide no constitutional remedy against such abuse of governmental power

merely because Plaintiff was fortunate enough that the officers missed and hit his vehicle instead.

Notwithstanding the lack of physical injury, the egregious behavior of the officers in their

unjustified and unprovoked use of deadly force sufficiently states a claim for a excessive force in

violation of Fourteenth Amendment.  Accordingly, the Court will deny Defendants' motion to

dismiss with respect to Mr. Craig.   Upon receipt of the Amended Complaint, Defendants are free

to renew their motion to dismiss the Fourteenth Amendment claim if the claim is impacted by

Plaintiff's Fourth Amendment Claim.  The Complaint does not allege that the Torrence County

Defendants were involved in an way with Mrs. Craig's arrest, therefore, like the Fourth

Amendment claim, this Fourteenth Amendment claim asserted by Mrs. Craig against the Torrence

County Defendants will be similarly dismissed.

**C.      Claim Seeking Municipal Liability**

The Torrence CountyDefendants seek to dismiss Count II of Plaintiffs' complaint which

alleges municipal liability against Torrance County for the constitutional violations allegedly

committed by Deputies Barrera, Encinias or Gallegos.

In general, only "persons" can be liable under § 1983, which states in pertinent part,

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....." 42 U.S.C. § 1983.  The Supreme Court has expanded the definition of "persons" under § 1983 to include municipalities and other local governmental units. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978).

A municipality can be held liable under 42 U.S.C. § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.  In addition, liability may arise against a municipality for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-91.  On the other hand, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691.

Accordingly, to state a claim against a municipality under § 1983 a plaintiff must allege that the deprivation of a federally protected constitutional or statutory right was the result of action taken pursuant to some official municipal policy or custom.  In this case, Mr. Craig alleges that Torrence County's failure to adequately train deputies in the use of excessive force resulted in a violation of his constitutional rights.  An alleged policy of inadequate training can provide a basis of municipal liability if there is "proof that the policymakers deliberately chose a training program which would prove inadequate." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).  In *City of Canton*, the Supreme Court held that municipal liability can attach when an

identified training deficiency is the actual cause of the violation of the plaintiff's federally protected rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) (holding that a city's failure to provide training to municipal employees that results in constitutional deprivation is cognizable under § 1983 but will only yield liability against a municipality when the city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants). A plaintiff seeking to establish municipal liability on the basis of inadequate training must show (1) a deliberately indifferent policy of training that was (2) the proximate cause of the violation of the plaintiff's federally protected rights. *Id.*

Plaintiff alleges that Defendant Torrance County's failure to train its officers in the use of proper force and failure to discipline was pursuant to a policy of deliberate indifference and led to the use of excessive force in violation the Fourteenth Amendment. More specifically, Plaintiff alleges that Defendants through Don Lyles and the Torrance County Sheriff Department encouraged, permitted and tolerated an official pattern, practice or custom of deputies violating the constitutional rights of the public at large. In addition, Plaintiff alleges that the Torrance County Sheriff Department failed to respond to citizen complaints of excessive force and otherwise ratified the use of excessive force. While the deliberate indifference and requisite causation standards imposed by *City of Canton* are difficult to satisfy, the issue in reviewing the sufficiency of a complaint is not whether the Plaintiff will ultimately prevail, but whether the Plaintiff is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court finds that Plaintiff's allegations are sufficient to withstand a motion to dismiss and that Mr. Craig is entitled to offer evidence in support of these claims.

**D.     Motion to Dismiss Based on Qualified Immunity**

The individual Torrence County Defendants, Israel Barrera, Don Lyles and Susan Encinias move to dismiss based on qualified immunity.   In the context of a motion to dismiss, once the qualified immunity defense is raised, the plaintiff must demonstrate both that the defendants' alleged conduct violated the law and that the law was clearly established when the alleged violation occurred.  *See Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994) (quotation omitted).  In an excessive force case, "the substantive inquiry that decides whether the force exerted by police was so excessive that it violated the ...[Constitution] is the same inquiry that decides whether the qualified immunity defense is available to the governmental actor."  *Diaz v. Salazar*, 924 F. Supp. 1088, 1093 (D.N.M. 1996).  As the Court has found above Mr. Craig has stated a claim for a Fourteenth Amendment violation based on Defendants' use of excessive force.

Clearly established Supreme Court law holds that "the use of deadly force to prevent the escape of an un apparently unarmed suspected felon" is unconstitutional.  *Tennessee v. Garner*, 471 U.S. 1.  Defendant Barrera argues that there is no clearly established law prohibiting the use of deadly force against a fleeing suspect who is not injured, citing to the Tenth Circuit's decision in *Bella* where there was no constitutional violation resulting from an officer's use of deadly force upon a fleeing helicopter.  The Court has already distinguished the *Bella* case on the grounds that this case presents sufficiently egregious circumstances to state a Fourteenth Amendment claim despite the lack of physical injury.  In *Bella* the fleeing suspect was armed and was a danger to himself and the public at large.  Here to the contrary, there is no suggestion that Mr. Craig was a danger to himself or others when he violated police instruction in order to return home to his wife and child during the snowstorm.    In this case, Mr. Craig was unarmed and presented no apparent danger.  Thus the use of deadly force against him violated clearly established law. Accordingly,

14

Defendant Barrerra's motion to dismiss based on qualified immunity is denied.

Defendant Lyles moves to dismiss based on qualified immunity on the grounds that Plaintiff has failed to establish supervisory liability. Supervisory liability under § 1983 requires "allegations of personal direction or of factual knowledge and acquiescence." *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992). Here, Plaintiff alleges that Defendant Lyles failed to discipline Defendants for their actions, essentially condoning and ratifying their use of excessive force, thereby establishing the requisite elements for a claim of supervisory liability. A supervisor who is sued in his individual capacity is entitled to assert a defense of qualified immunity. In order to overcome this defense, a plaintiff must establish that the actions of the other parties involved were unconstitutional. *See Hinton v. City of Elwood, Kansas*, 997 F.2d 774, 783 (10th Cir. 1993). Mr. Craig has alleged and properly stated a claim for a violation of his Fourteenth Amendment rights against Deputy Barrera, thereby overcoming Sheriff Lyles assertion of qualified immunity at this point.

Defendant Encinias also asserts a claim of qualified immunity on the grounds that there is no clearly established law requiring her to prevent another law enforcement officer's use of deadly force. To the contrary, the Tenth Circuit does recognize such derivative actions for an officer's failure to prevent another officer's use of deadly force. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). An officer has a duty to take reasonable steps to prevent a fellow officer from using excessive force. *Id.* There is evidence that Officer Encinias was riding with the officers who used deadly force, was in close contact with them, and thus could have exercised her authority as a police officer to prevent the unconstitutional use of force. This is not a situation where the use of force arose out of a rapidly developing hostile situation. Rather, making all

15

reasonable inferences in favor of Plaintiff, the use of deadly force was sufficiently preventable to give rise to a duty on the part of Deputy Encinias to intervene.  On these grounds her motion to dismiss based on qualified immunity will be denied.

**E.**      **Plaintiffs' Claims for Common Law Torts**

Defendants move to dismiss Plaintiffs' claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and the tort of "outrage" on behalf of their minor son Michael Craig.  It is well established that there is no waiver of immunity under the New Mexico Tort Claims Act for negligent infliction of emotional distress, intentional infliction of emotional distress, or "outrage," as these are not predicate torts enumerated in 1978 NMSA § 41-4-12 (1996), the statutory provision applicable to law enforcement officers, *See also Romero v. Otero*, 678 F. Supp. 1535, 1540 (D.N.M. 1987); *Weinstein v. City of Santa Fe*, 121 N.M. 646, 653  (1996).  Plaintiffs concede that their claims based on bystander liability are not waived by the Tort Claims Act, but argue instead that Plaintiff Michael Craig states a cause of action for emotional distress based on Defendants' violation of his rights under 1978 NMSA § 3-13-2 (requiring police officers to apprehend lawbreakers) and §41-4-2 (requiring the sheriff to cause all offenders to keep the peace). *See Weinstein v. City of Santa Fe*, 121 N.M. at 654 (claim of emotional distress can be made against law enforcement for violating NMSA §§3-13-2, 41-4-2). Plaintiffs assert that under these statutes Defendants had a duty to arrest lawbreakers for the protection of Plaintiffs as members of the public, the lawbreakers in this case being the officers who violated the constitutional rights of Mr. and Mrs. Craig by using excessive force.  Under Plaintiffs' theory, the Defendants failure to arrest their fellow officers thereby caused the emotional distress of  Michael Craig who observed the incident.  The Court is not persuaded that

NMSA §§ 3-13-2 and 41-4-2 are applicable to the case at hand.  These statutory provisions direct police officers to enforce the laws vis-a-vis third party lawbreakers or criminals, specifically referring to "offenders" and "lawbreakers."  In *Weinstein v. City of Santa Fe*, the Court found that these provisions allowed the parents of a crime victim to state a claim of emotional distress against police officers who had failed to apprehend the third party suspect.  *Id.* There is no case law or statutory interpretation applying these provisions to law enforcement officers for failing to enforce the laws against fellow law enforcement officers who are engaging in an immediate abuse of their authority, as alleged in the present case.  If this Court were to find that immunity was waived under the Torts Claims Acts, considering the Torrance County Defendants lawbreakers for purposes of §3-13-2 or criminals for the purposes of §4-41-2 simply because Plaintiffs accused them of wrongdoing then there would never be emotional distress immunity under the Tort Claims Act under any circumstances for law enforcement officers accused of wrongdoing.  Such an interpretation of those two statutory provisions would create an exception to the Tort Claims Act's grant of sovereign immunity which would render the grant of immunity meaningless.  On these grounds, the Court finds that Plaintiffs' claims for intentional infliction of emotional distress, negligent infliction of emotional distress and "outrage" are barred pursuant to the New Mexico Tort Claims Act and will be dismissed accordingly.

Plaintiffs also argue that Michael Craig  maintains a direct action for assault against the Torrance County Defendants because they caused an imminent apprehension of harmful contact. A plaintiff can state a claim for assault under allegations that the actor:

    a)       acted intending to cause a harmful or offensive contact with the person or the other *or a third person*, or an immediate apprehension of such a contact; and

b)       the other is thereby put in such immediate apprehension.

Restatement (Second) of Torts § 21 (emphasis added).  If an act is intended to put another in

apprehension of an immediate bodily contact and succeeds in so doing, the actor is subject to

liability for assault "although his act would not have put a person of ordinary courage in such

apprehension."  Restatement (Second) of Torts §27.  Plaintiffs contend that the elements of

assault should be construed from the perspective of a reasonable four-year-old and therefore it is

immaterial that Michael Craig was put in apprehension by acts that would not have caused

apprehension on the part of a normally constituted persons.  Defendants make no legal argument

to the contrary, but merely argue that Michael Craig has failed to allege the basic elements of

assault.  The Court agrees that the Complaint alleges only that the actions were committed in the

presence of Michael Craig.  There is no allegation that Michael Craig was placed in apprehension

of immediate harm, as required under the tort of assault.  Nonetheless, rather than dismiss this

potentially viable claim, the Court will permit Plaintiffs to amend their Complaint to state more

fully the elements of assault against Michael Craig. *See Forman v. Davis*, 371 U.S. 178, 182

(1962) (rather than dismissing a claim, court shall give leave to amend when justice so requires);

Moore's Federal Practice 3d §12.34[5].

## CONCLUSION

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Fourth

Amendment Claim **[Doc No. 24]** is **DENIED** with respect to Plaintiff Steven Craig, but is

**GRANTED** with respect to Plaintiff Julie Craig; Motion to Dismiss Fourteenth Amendment

Claim **[Doc No 25]** is **DENIED** with respect to Plaintiff Steven Craig, but is **GRANTED** with

18

respect to Plaintiff Julie Craig; Motion to Dismiss Count II of Plaintiffs' Complaint **[Doc No 26]**

is **DENIED**; Motion to Dismiss Based on Qualified Immunity **[Doc. No. 28]** is **DENIED**; and

Motion to Dismiss Count IV of Plaintiffs' Complaint **[Doc. No. 27]** is **GRANTED IN PART** and

**DENIED IN PART**.  Plaintiffs are instructed to amend the Complaint within 20 days of the date

of this Order.  At that time Defendants may renew their Motion to Dismiss the Fourth

Amendment Claim and the Fourteenth Amendment claim, if applicable.

      **DATED** this 23rd day of August, 2000.

                      _____

                      **MARTHA VÁZQUEZ**

                      **U. S. DISTRICT JUDGE**

Attorney for Plaintiffs
Jason Alarid

Attorney for Defendants
H. Nicole Schamban

19